**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

GARY ARTHUR HOLYOKE,

Plaintiff,

v.

6:22-CV-316 (MAD/ATB)

MOHAWK VALLEY HEALTH SYSTEM and MOHAWK VALLEY COMMUNITY SERVICES,

Defendants.

GARY ARTHUR HOLYOKE, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

**ORDER and REPORT-RECOMMENDATION**

The Clerk has sent to the court for review a complaint brought pursuant to 42 U.S.C. § 1983, filed by plaintiff Gary Arthur Holyoke. (Dkt. No. 1) ("Compl."). Plaintiff has also moved to proceed in forma pauperis ("IFP"). (Dkt. No. 2).

## I. In Forma Pauperis ("IFP") Application

A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). After reviewing his application, this court finds that plaintiff is financially eligible for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants, and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp*., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp*., 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II. Complaint

Even construing plaintiff's allegations with the utmost liberality,[1] the complaint is difficult to comprehend and reads as a confusing stream of consciousness. Although plaintiff has only named Mohawk Valley Health System ("MVHS") and Mohawk Valley Community Services ("MVCS") as defendants in this action, the body of the complaint identifies various other people and entities who have apparently wronged plaintiff throughout his life. Plaintiff begins by asserting that his "main complaint" is against his parents, Maria and Art Holyoke, along with case managers for the ACT Team.[2] (Compl. at 5).[3] Plaintiff asserts that the ACT Team was "supposed to help [him] secure an apartment while on emergency homelessness caused by" his ex-landlord, Denise Crist, which was "forced by Robert Glenn." (*Id.*). Plaintiff also appears to complain about the inaction of his "case manager" Bob Michelle, who "acted like he just had to count pills at the beginning of the pandemic." (*Id.*).

Plaintiff proceeds to describe various events in his remote past which appear to have nothing to do with his complaint against the named defendants. Plaintiff alleges that "the story mainly starts in 1994," describing an apparent custody dispute between himself and the mother of his alleged child. (*Id.* at 5–6). Plaintiff also alleges that

---

[1] *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).

[2] "Assertive Community Treatment" offers treatment, rehabilitation, and support services to individuals that have been diagnosed with a serious mental illness. Services are provided to individuals by a mobile, multi-disciplinary team in community settings. https://omh.ny.gov/omhweb/act/

[3] Citations to the complaint refer to the pagination generated by the court's electronic filing system ("CM/ECF").

Maria and Art Holyoke not only failed to provide him with assistance at this time in his life, but furthermore took out an order of protection against plaintiff and "screw[ed] up a deal [plaintiff] was making with another guy" to secure a mortgage. (*Id.* at 6). Plaintiff asserts that while he has been trying to deal with his "issues" his "parents and other services have basically railroaded" him, and that his mother and father never cared about him. (*Id.* at 7).

Plaintiff alleges there came a time when he was "in between residences," and his mother told him to "sleep on the cellar floor," on the deck, or in the back of her car. (*Id.*). At the same time, the ACT Team was trying to "9.6"[4] plaintiff. (*Id.*). Plaintiff alleges that the ACT team kept "trying to prescribe Invega Sustena to [him] and keep [him] up for long hours with no medical supervision . . . [w]hich could be considered an attempted medical murder." (*Id.* at 7–8). Plaintiff refers to the ACT Team's actions as "Nazi tactics for a form of genocide." (*Id.* at 8). Plaintiff alleges that the ACT Team's "crimes" consisted of forcing him to medicate for his "best interest," when really they were "trying to stop [plaintiff] from doing anything . . . which is all completely legal in working at home" on his photography and digital artwork. (*Id.*). Plaintiff claims that the ACT Team was oppressive, and the "psychiatric field" attempted to stop him from consulting with medical professionals. (*Id.*). Plaintiff also alleges that the "psychiatric teams" have failed to understand his true underlying medical conditions of tinnitus and "possible Havana Syndrome." (*Id.*). He states that the medication prescribed to him is

[4]The court assumes that plaintiff is referring to § 9.60 of the Mental Hygiene Law, which allows for court-ordered assisted outpatient treatment "to ensure that individuals with mental illness and a history of hospitalizations or violence participate in community based services appropriate to their needs." *See* https://my.omh.ny.gov/analytics/saw.dll?dashboard.

causing "over alertness," a lack of sleep and vertigo. (*Id.* at 8–9). According to plaintiff, "[a]ll this is being done by [defendant] Mohawk Valley Community Services without [a] proper medical team at their disposal as an outpatient service[.]" (*Id.*).

Plaintiff makes additional references to events which took place in 1994, including an apparent New York State hearing pursuant to the Mental Hygiene Law, wherein it was determined that plaintiff did not have to take psychiatric medication. (*Id.* at 9). Plaintiff alleges that the ACT Team is at fault for ignoring "everything" concerning plaintiff's apparent eviction in 2022 after which he "lost much personal belongings that were in a U-Haul storage facility." (*Id.* at 10). Plaintiff alleges that the ACT team, among others, "tr[ies] to make plans for [plaintiff's] life but . . . without consulting [him] to figure out what would be in [his] best interests." (*Id.* at 11). In summary, plaintiff state that the "psychiatric field" is "trying to lie and cover up their actions" in order to "railroad" plaintiff. (*Id.*).

As his "causes of action," plaintiff asserts that he went to the defendant MVHS for pain and depression, however they continued to put him in the "psych unit" when he was trying to rest and look for work. (*Id.* at 3). Plaintiff also contends that he had to pay for his own emergency shelter once he was transferred to the ACT Team, despite the fact the ACT Team was "suppose[d] to help secure [plaintiff a] new residence[.]" (*Id.*). Plaintiff seeks $1.5 million in damages. (*Id.* at 4).

## III. Section 1983

### A. Legal Standards

A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *See West v. Atkins*, 487 U.S. 42, 48-49 (1988). Private parties are generally not state actors, and are therefore not usually liable under § 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); see also *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties. . . .") (internal quotation marks and citation omitted).

For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: "(1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Caballero v. Shayna*, No. 18-CV-1627, 2019 WL 2491717, at *3 (E.D.N.Y. June 14, 2019) (citing *Sybalski v.*

*Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Id.* (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).

**B. Application**

One of the named defendants in plaintiff's complaint, MVHS, is an organization comprised of numerous privately owned healthcare entities, including hospitals, primary care facilities, and urgent care centers.[5] The identity of the other named defendant, MVCS, is less apparent, however plaintiff has not alleged that MVCS was acting under the color of state law, or was otherwise a "state actor." Because plaintiff has failed to plausibly allege that the named defendants acted under color of state law, the complaint fails to state any claims for relief under § 1983. *See White v. St. Joseph's Hosp.*, 369 Fed. App'x 225, 226 (2d Cir. 2010) ("[P]rivate actors and institutions, such as the hospitals . . . named as defendants in [plaintiff's] complaint, are generally not proper § 1983 defendants because they do not act under color of state law.").

Moreover, even if plaintiff had sufficiently alleged that MVCS was acting under color of state law, the court cannot discern from the complaint any federally cognizable harm that plaintiff suffered as a result of the actions taken by this defendant. Plaintiff has listed a host of disjointed complaints ranging from mistreatment by his parents to improper medical care by the ACT Team. It is unclear from the face of the complaint

[5] *See* https://www.mvhealthsystem.org/about

whether the ACT Team has any association with this defendant.[6] The only coherent allegation made directly against MVCS is in the context of the provision of plaintiff's medical care, alleging that it "is being done by [MVCS] without [a] proper medical team at their disposal as an outpatient service[.]" (Compl. at 8–9). At best, these allegations evidence plaintiff's disagreement with his prescribed treatment and discontent with the quality of his medical care. A claim of inadequate medical care rises to the level of a constitutional violation only where the facts alleged show that the defendant was deliberately indifferent to a plaintiff's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not a plaintiff's constitutional rights. *See Williams v. Sykes*, No. 9:17-CV-990 (TJM/ATB), 2019 WL 2374116, at *4 (N.D.N.Y. May 10, 2019), *report and recommendation adopted*, 2019 WL 2369882 (N.D.N.Y. June 5, 2019) (citing *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001)). Thus, to the extent MVCS did act under color of state law, the medical malpractice allegations against it as set forth in plaintiff's complaint are not actionable under § 1983.

[6]However, in a separate matter this court has concluded, based on the plaintiff's filing in that case, that the ACT Team was an entity operating as an arm of the New York State Office of Mental Health, and was thus protected from suit by Eleventh Amendment immunity. *See Klestinez v. ACT Team*, No. 6:21-CV-696 (GLS/ATB), 2021 WL 4086128, at *3 (N.D.N.Y. Aug. 19, 2021), *report and recommendation adopted*, 2021 WL 4084270 (N.D.N.Y. Sept. 8, 2021).

## IV. Opportunity to Amend

### A. Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

### B. Application

The court is recommending dismissal of this action for lack of subject matter jurisdiction over the § 1983 claim against the defendants. Thus, any dismissal must be without prejudice. *Hollander v. Garrett*, 710 F. App'x 35, 36 (2d Cir. 2018) ("[D]ismissal for subject matter jurisdiction must be without prejudice."). However, this court has serious doubts about whether plaintiff can amend to assert any form of federal jurisdiction over the situation that plaintiff describes in his complaint. As there appears no basis for plaintiff to raise his claims in federal court, the court should not allow plaintiff to amend, notwithstanding a dismissal without prejudice. Because lack of subject matter jurisdiction is a substantive defect, *Deul v. Dalton*, No. 1:11-CV-0637(GTS/RFT), 2012 WL 235523, at *8 n.19 (N.D.N.Y. Jan. 25, 2012), the court recommends dismissal without leave to amend.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED FOR PURPOSES OF FILING** at this time, and it is

**RECOMMENDED**, that this action be **DISMISSED WITHOUT**

**PREJUDICE**, but without the opportunity for amendment, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on the plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: April 13, 2022

Andrew T. Baxter
U.S. Magistrate Judge